Matthew L. Johnson (6004)
Russell G. Gubler (10889)
JOHNSON & GUBLER, P.C.
Lakes Business Park
8831 West Sahara Avenue
Las Vegas, Nevada 89117
Phone: (702) 471-0065
Fax: (702) 471-0075
e-mail: mjohnson@mjohnsonlaw.com

*Proposed Attorneys for Debtor*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: <br><br> SF GALLERIA, LLC, <br><br> Debtor. | Case No: 18-12635-LEB <br><br> Chapter 11 <br><br><br> **Hearing Date: July 10, 2018** <br> **Hearing Time: 9:30 a.m.** |

**MOTION TO SELL REAL PROPERTY PURSUANT TO 11 U.S.C. §363**

    Debtor, SF GALLERIA, LLC, a Nevada limited liability company ("Debtor"), through its proposed attorney, Matthew L. Johnson, Esq., of the law firm of JOHNSON & GUBLER, P.C., respectfully moves this Court for an Order approving the sale of Debtor's real property located at 1291 Galleria Drive, Henderson, NV 89014 (the "Property"). Debtor seeks to sell the Property pursuant to 11 U.S.C. §363(b), with the proceeds of the sale being used to pay all of the secured creditors who hold claims secured by the Property of approximately $4,457,650.00. Debtor entered into a pre-petition agreement with Clark County, Nevada (the "County") to sell the Property for $5,330,000.00; however since an appraisal of the property has been reviewed, the County's offer has been reduced to $5,150,000.00. Even with the price reduction, it is anticipated that there will be sufficient proceeds from the sale to pay all secured creditors in full, and to pay the real estate commissions of the professionals who brought the buyer to Debtor. Debtor

therefore respectfully requests that the Court enter an Order allowing Debtor to proceed with sale of the Property to the County, as more fully set forth in this Motion.

This Motion is made and based on the attached Points and Authorities, the papers and pleadings on file herein, the Declaration on file herein in support of the Motion, and any oral argument that the Court may entertain at the time of any hearing on this Motion.

## I. BACKGROUND

**A.     Sale of the Exempt Property**

1. Debtor, SF GALLERIA, LLC, a Nevada limited liability company, is a single asset real estate debtor as defined in 11 U.S.C. §101(51B).

2. Debtor's primary asset is the Property located at 1291 Galleria Drive, Henderson, NV 89014.

3. On May 2, 2017, Debtor entered into an Exclusive Right to Sell Listing Agreement (the "Listing Agreement") with Sun Commercial Real Estate Inc. to sell the Property. *See* Exhibit 1.

4. On November 10, 2017, Debtor agreed to extend the Listing Agreement. *See* Exhibit 2.

5. On March 14, 2018, Debtor accepted Clark County Nevada's Conditional Offer to Purchase Real Property (the "Conditional Offer") for the sum of $5,330,000.00, with a projected closing date of September 11, 2018. *See* Exhibit 3.

6. There are three deeds of trust regarding Debtor's Property. The first trust deed is held by Bank of the West ("Bank of the West"), which is owed approximately $2,807,195.00. The second trust deed is held by Plain Green, LLC ("Plain Green"), which claims to be owed approximately $691,000.00. The third trust deed is held by MGM Nevada Holdings, LLC, which is owed approximately $959,455.00.

7. Prior to filing the petition, the holder of the second trust deed, Plain Green, commenced foreclosure proceedings. Debtor engaged in extensive negotiations and reached a

tentative resolution with Plain Green to stop the foreclosure.  However, the holder of the first trust deed, Bank of the West, filed suit to appoint a receiver, as the loan period had matured and Bank of the West called the loan due.

8. By this time, Debtor had received an offer from the County to purchase the Property for a price that would pay all creditors in full.  Unfortunately, Bank of the West insisted on Debtor paying an exorbitant forbearance fee, among other unreasonable conditions, and therefore Debtor was unable to reach an agreement acceptable to both the holders of the first and second trust deeds.  Debtor was forced to file this Chapter 11 case to stop both Bank of the West and Plain Green from proceeding, and to protect the Property.

9. Debtor is seeking employment of Sun Commercial Real Estate Inc. and assumption of the Listing Agreement by separate application filed concurrently herewith.

10. Following a recent appraisal of the Property, the County reduced its offer to purchase to $5,150,000.00.  *See* Declaration of Cathy Jones filed concurrently herewith.  When a revised written offer is finalized, Debtor will submit it to the Court by a supplement to this Motion.

11. By this Motion, Debtor seeks court approval pursuant to §363(f) to sell the Property, in full satisfaction of all secured creditors' claims of approximately $4,457,650.00, to the County, for the revised purchase price of $5,150,000.00, and to pay all secured creditors, broker's fees, and closing costs through escrow at the time of the closing.

## II. ARGUMENT

**A.     This Court Should Authorize Debtor to Sell Debtor's Property Free and Clear of all Liens and Encumbrances.**

Under 11 U.S.C. §363(b) and (f), a debtor in possession "may sell property . . . free and clear of any interest in such property of an entity other than the estate . . . if . . . such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property."  Such a sale is appropriate, especially if the sale is in the best interests of

1  the estate. *See In re The Huntington Limited*, 654 F.2d 578, 589 (9th Cir. 1981) ("If a Chapter 11
2  proceeding is filed in good faith with the intention of restructuring the debtor's ailing financial
3  situation, and if it subsequently appears that a sale of assets is in the best interests of the estate, it
4  is within the power of the bankruptcy court to authorize such a sale." (Citations omitted)). *See*
5  *also In re Investors Funding Corp. Of New York*, 592 F.2d 134, 135 (2nd Cir. 1979) ("Generally,
6  a sale free of encumbrances is disfavored if the aggregate of the encumbrances is greater than the
7  proceeds of the sale but favored if the estate has an equity in the property and the sale is in the
8  best interest of the estate." (Citations omitted)). Furthermore, if the sale is less than the amount
9  owing to the secured creditor, a sale is appropriate if the secured creditor consents.
10     In this case, 11 U.S.C. §363(f)(3), allows Debtor to sell its assets free and clear of liens
11 and encumbrances. Debtor owes creditors secured by the Property a sum of approximately
12 $4,457,650.00. There are approximately $47,000 in unsecured claims. The County's offer to
13 purchase the Property for $5,150,000.00, which amount exceeds the aggregate value of all valid
14 liens against the property, would provide payment in full of all secured creditors' claims, and
15 further generate sufficient funds to pay all creditors (secured and unsecured) in full.
16 / / /
17 / / /
18 / / /
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26

### III. CONCLUSION

For all of the above reasons, Debtor respectfully requests that the Court enter an Order: 1) allowing Debtor to sell the Property to the County, free and clear of all liens and encumbrances pursuant to 11 U.S.C. §363(b) and (f); 2) to pay the secured claims, real estate broker fees, and all closing costs through escrow, with any excess proceeds to be paid to Debtor and placed into Debtor's Debtor-In-Possession account pending further order of the Court; and 3) for such other relief as this Court deems just.

DATED: June 7, 2018.

JOHNSON & GUBLER, P.C.

*/s/ Matthew L. Johnson*            .
Matthew L. Johnson (6004)
Russell G. Gubler (10889)
Lakes Business Park
8831 West Sahara Avenue
Las Vegas, Nevada 89117
*Proposed Attorneys for Debtor*

# EXHIBIT 1

# Sun Commercial Real Estate, Inc.

### EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT
(This is a legally binding contract. If not understood, seek competent advice.)

For value received, I/We, the undersigned, hereinafter referred to as "OWNER", do hereby irrevocably employ and give Sun Commercial Real Estate, Inc., hereinafter referred to as "BROKER", the exclusive right to sell the real property situated at 1291 Galleria Dr. , Henderson, Nevada, 89014 hereinafter referred to as "PROPERTY" and further described herein. This contract is to be referred to as "LISTING AGREEMENT".

1. **PROPERTY**: PROPERTY is located on the Southeast corner of Galleria Dr. and Mall Ring Circle in the city of Henderson, NV, at the civic address of 1291 Galleria Dr., Henderson, NV 89014. PROPERTY's parcel number is 178-03-110-022.

2. **List Price**: The List Price shall be Five Million Three Hundred Thirty Thousand and 0/100 Dollars ($5,330,000.00), or sales terms acceptable to OWNER.

3. **Terms**: Terms and conditions acceptable to OWNER.

4. **Listing Agreement Term**: LISTING AGREEMENT shall commence on May 2, 2017(the "COMMENCEMENT DATE"), and shall be in effect for six (6) consecutive months (the "LISTING AGREEMENT TERM") and terminate on November 2, 2017 (the "TERMINATION DATE") subject to the following terms and conditions:

5. **Compensation to Broker**: Notice: The amount or rate of real estate commissions is not fixed by law. Commissions are set by each broker individually and may be negotiable between the owners and brokers. The undersigned hereby agree to compensate BROKER in cash, through Escrow at the close thereof, in an amount described herein, for services as follows:

    a. **Sale Commission**: If the PURCHASER is represented by any real estate agent or Broker other than BROKER, herein referred as OUTSIDE-BROKER, then OWNER shall pay a total of four percent (4%) of the Total Sales Price of PROPERTY, payable through Escrow at the close thereof. In the Event that no OUTSIDE-BROKER is used in said transaction, the commission payable by the OWNER to BROKER shall be a total of three percent (3%) of the Total Sales Price of PROPERTY, payable through Escrow at the close thereof.

    b. The parties understand and agree that this is an exclusive right to sell listing, and BROKER shall be entitled to the commission hereinafter established if,

        i. PROPERTY is sold by any person or entity, including the OWNER, to any person or entity during LISTING AGREEMENT TERM or any renewal or extension thereof; or

        ii. OWNER or any other person or entity secures a PURCHASER ready, willing and able to purchase, lease option, exchange, joint venture, or option to purchase PROPERTY for such price and terms as specified herein, or such other price or terms as OWNER may accept during LISTING AGREEMENT TERM; or

        iii. an agreement to sell, lease option, exchange, joint venture, or option to purchase PROPERTY is entered into during LISTING AGREEMENT TERM and/or ultimately said agreement is completed after TERMINATION DATE; or

        iv. BROKER is the procuring cause of a sale, lease option, exchange, joint venture, or option to purchase of PROPERTY; or

        v. PROPERTY is sold by OWNER or any other person or entity within 180 days after TERMINATION DATE (or if an escrow is opened within the above noted time period and a sale closes after the above noted time period) to any person or entity that is introduced to PROPERTY during LISTING AGREEMENT TERM and still has bona fide interest in purchasing PROPERTY as of TERMINATION DATE of which BROKER or OWNER has knowledge or notice thereof of such introduction and bona fide interest. Notice must be given in writing within ten (10) business days after TERMINATION DATE naming the bona fide interested parties.

6. BROKER is herein authorized to accept a deposit for any part of the purchase price and place it in a third party escrow established for the sale, lease option, exchange, or option to purchase of PROPERTY.

Initial ___ Initials MGM

7. OWNER agrees that if an escrow for the sale, lease option, exchange, or option to purchase of PROPERTY is opened with a title company, LISTING AGREEMENT TERM and TERMINATION DATE shall be automatically extended, without further notice required, for the entire escrow period.

8. The parties understand and agree that BROKER'S undertaking pursuant to LISTING AGREEMENT is limited to the procurement of a PURCHASER ready, willing and able to buy PROPERTY on the terms and conditions specified, and that the commission established herein shall be due and payable as described herein.

9. OWNER agrees to convey said PROPERTY to PURCHASER by a grant, bargain and sale deed and to furnish ALTA/CTLA title insurance policy at OWNER'S expense. OWNER further agrees to deliver any personal property, if any, by a valid Bill of Sale.

10. OWNER hereby warrants that no options to purchase PROPERTY have been extended to any third party by OWNER.

11. OWNER warrants that he/she knows of no legal action affecting PROPERTY.

12. AGREEMENT TO MEDIATE: OWNER and BROKER agree that any dispute or claim involving the undersigned and arising out of or relating to LISTING AGREEMENT, shall be submitted to mediation and that neither party shall commence litigation without first participating or offering in good faith to participate in the mediation process.

13. In the event suit is brought by either party to enforce LISTING AGREEMENT, the prevailing party is entitled to court costs and reasonable attorneys' fees.

In consideration of the above LISTING AGREEMENT and authorization, BROKER and/or his representatives agree to use diligence in their efforts to bring about the sale, exchange or option of PROPERTY.

**BROKER:**
**Sun Commercial Real Estate, Inc.**

By: *CCHsu*
Name: Cassandra "Cassie" Catania-Hsu
Its: Broker
Date: 5/4/17
Address: 6140 Brent Thurman Way, Ste#140
         Las Vegas, Nevada 89148
Phone: 702.968.7300
Fax: 702.968.7301

THE UNDERSIGNED ACKNOWLEDGE THAT THEY HAVE READ THIS ENTIRE CONTRACT AND AGREE TO THE TERMS AND CONDITIONS HEREIN. THE UNDERSIGNED WARRANT THAT THEY ARE THE LEGAL OWNERS OF SAID PROPERTY WITH FULL AUTHORIZATION TO EXECUTE THIS CONTRACT.

Receipt of a copy of this contract is hereby agreed, acknowledged and accepted.

**OWNER:**
**SF Galleria LLC, a Nevada limited liability company**

By: *Mazzara*
Its: Manager
Name: Marty Mazzara
Date: 5/3/2017
Address: _____

Phone: _____
Fax: _____

Initial _____ Initials MGM

## DUTIES OWED BY A NEVADA REAL ESTATE LICENSEE
*This form does not constitute a contract for services nor an agreement to pay compensation.*

In Nevada, a real estate licensee is required to provide a form setting forth the duties owed by the licensee to:
   a) Each party for whom the licensee is acting as an agent in the real estate transaction, and
   b) Each unrepresented party to the real estate transaction, if any.

---

**Licensee:** The licensee in the real estate transaction is Cathy Jones
whose license number is B.0056010.CORP. The licensee is acting for [client's name(s)] SF Galleria LLC, A Nevada Limited Liability Company who is/are the [✓] Seller/Landlord; [ ] Buyer/Tenant.

**Broker:** The broker is Cassandra "Cassie" Catanie-Hsu, whose company is Sun Commercial Real Estate.

Are there additional licensees involved in this transaction? [✓] Yes  [ ] No  If yes, Supplemental form 525A is required.

---

**Licensee's Duties Owed to All Parties:**
A Nevada real estate licensee shall:
1. Not deal with any party to a real estate transaction in a manner which is deceitful, fraudulent or dishonest.
2. Exercise reasonable skill and care with respect to all parties to the real estate transaction.
3. Disclose to each party to the real estate transaction as soon as practicable:
    a. Any material and relevant facts, data or information which licensee knows, or with reasonable care and diligence the licensee should know, about the property.
    b. Each source from which licensee will receive compensation.
4. Abide by all other duties, responsibilities and obligations required of the licensee in law or regulations.

**Licensee's Duties Owed to the Client:**
A Nevada real estate licensee shall:
1. Exercise reasonable skill and care to carry out the terms of the brokerage agreement and the licensee's duties in the brokerage agreement;
2. Not disclose, except to the licensee's broker, confidential information relating to a client for 1 year after the revocation or termination of the brokerage agreement, unless licensee is required to do so by court order or the client gives written permission;
3. Seek a sale, purchase, option, rental or lease of real property at the price and terms stated in the brokerage agreement or at a price acceptable to the client;
4. Present all offers made to, or by the client as soon as practicable, unless the client chooses to waive the duty of the licensee to present all offers and signs a waiver of the duty on a form prescribed by the Division;
5. Disclose to the client material facts of which the licensee has knowledge concerning the real estate transaction;
6. Advise the client to obtain advice from an expert relating to matters which are beyond the expertise of the licensee; and
7. Account to the client for all money and property the licensee receives in which the client may have an interest.

**Duties Owed By a broker who assigns different licensees affiliated with the brokerage to separate parties.**
Each licensee shall not disclose, except to the real estate broker, confidential information relating to client.

**Licensee Acting for Both Parties:**
The Licensee
MAY [_____/_____]    **OR**    MAY NOT [ MCH /_____]
in the future act for two or more parties who have interests adverse to each other. In acting for these parties, the licensee has a conflict of interest. Before a licensee may act for two or more parties, the licensee must give you a "Consent to Act" form to sign.

I/We acknowledge receipt of a copy of this list of licensee duties, and have read and understand this disclosure.

Seller/Landlord: Mark LK    Date: 5/3/2017    Time: _____

Seller/Landlord: _____    Date: _____    Time: _____
**OR**
Buyer/Tenant: _____    Date: _____    Time: _____

Buyer/Tenant: _____    Date: _____    Time: _____

Approved Nevada Real Estate Division                                                525
Replaces all previous versions                                                      Revised 11/7/16

## SUPPLEMENTAL LIST OF LICENSEES PARTY TO THE
## DUTIES OWED BY A NEVADA REAL ESTATE LICENSEE

*This form does not constitute a contract for services nor an agreement to pay compensation.*

Licensee: Cathy Jones , is acting for SF Galleria LLC

Broker: Cassandra "Cassie" Catania-Hsu

Additional licensees on this transaction, listed below, are subject to NRS 645.252, NRS 645.254, and the Duties Owed *By* A Nevada Real Estate Licensee:

| NAME | LICENSE NUMBER |
|---|---|
| Roy Fritz | S.0169670 |
| Jessica Cegavske | BS.0143657 |
| Jennifer E. Lehr | BS.0143951 |

I/We acknowledge receipt of a copy of this Supplemental List of Licensees.

Seller/Landlord: [signature] Mark LK   Date: 5/3/2017   Time: _____

Seller/Landlord: _____   Date: _____   Time: _____

**OR**

Buyer/Tenant: _____   Date: _____   Time: _____

Buyer/Tenant: _____   Date: _____   Time: _____

Approved Nevada Real Estate Division
Replaces all previous versions

525A
Revised 11/7/16

# EXHIBIT 2



6140 Brent Thurman Way Suite 140
Las Vegas, NV 89148
702 | 968 | 7300 Ph  702 | 968 | 7301 Fax

November 10, 2017

*VIA EMAIL*

S F Galleria LLC
C/o Marty Mazzara & Zach Roberts
zach@greatlasvegashomes.com; marty@proto-call.com

RE: **Extension to the Exclusive Right to Sell Listing Agreement**
    1291 Galleria Drive, Henderson, Nevada 89014

Dear Marty & Zach,

This letter shall serve as an Amendment to the Exclusive Right to Sell Listing Contract, dated the 2nd day of May, 2017 (the "Listing"), entered into by and between S F Galleria LLC (the "Owner") and Sun Commercial Real Estate, Inc. (the "Broker"), which exclusively lists for sale of the office Building having the civic address of 1291 Galleria Drive, Henderson, Nevada 89014 (the "Property"), as more particularly described in the Listing.

Now, therefore, Landlord and Broker hereby agree to amend the Listing as follows:

1. Extend the Termination Date, as noted in the Listing, such that the term shall expire at midnight on the 15th day of May 2018.

All other terms and conditions of the Listing shall remain unchanged. The parties hereto agree, acknowledge and accept the aforementioned terms, and accept said extension by execution below.

Sincerely,

*Cathy Jones* (signature)
Cathy Jones
Sun Commercial Real Estate Inc.

**Owner:**
**S F Galleria LLC**
By: _(signature)_
Name: ZACH ROBERTS
Its: MANAGER
Date: 12/15/17

**Broker:**
**Sun Commercial Real Estate, Inc.**
By: _____
Name: _____Cassandra Catania-Hsu_____
Its: _____Managing Broker_____
Date: _____

# EXHIBIT 3

# Department of Real Property Management
## Property Management and Acquisition Division

500 S Grand Central Pky 4th Fl • Box 551825 • Las Vegas NV 89155-1825
(702) 455-4616 • Fax (702) 455-4055

Lisa Kremer, Director

March 7, 2018

**VIA CERTIFIED MAIL #9171 9690 0935 0144 8758 44**
Jessica Cegavske
Sun Commercial Real Estate, Inc.
6140 Brent Thurman Way, Suite 140
Las Vegas, NV 89148

c/o SF Galleria, LLC
5940 South Rainbow Boulevard
Las Vegas, NV 89118

**RE: CONDITIONAL OFFER TO PURCHASE REAL PROPERTY**
      (1291 West Galleria Drive, Henderson, NV 89014)
      ASSESSOR'S PARCEL NUMBER 178-03-110-022

Dear SF Galleria, LLC:

Please consider this Clark County's Conditional Offer to Purchase Real Property (the "Conditional Offer") with respect to the above referenced property, subject to the following terms and conditions.

**PARTIES:**

This Conditional Offer is made by Clark County, a Political Subdivision of the State of Nevada ("County"), to SF Galleria, LLC. ("Seller") (Collectively the "Parties").

**LOCATION AND DESCRIPTION:**

The Property for which this Conditional Offer is being made consists of One (1) +/-42,640 square foot office building on approximately 2.36 acres of developed land (APN 178-03-110-022) located on the South side of Galleria Drive between Stephanie Street and Marks Street, Henderson, NV 89014, Clark County as further described in Exhibit A ("Property") attached hereto and incorporated herein by reference.

**INTEREST TO BE ACQUIRED:**

The Conditional Offer is for a fee simple interest in the Property, free of liens and encumbrances.

**AMOUNT OF OFFER:**

On behalf of the County, the sale and purchase price for the Property shall be a cash offer of Five Million Three Hundred Thirty Thousand Dollars ($5,330,000) ("Purchase Price").

**DUE DILIGENCE PERIOD:**

The County will open escrow with Chicago Title ("Escrow Opening"), as detailed herein, which will be the start of County's due diligence. The time period of One Hundred Twenty (120) calendar days from the date of Escrow Opening is defined as the "Due Diligence Period". The Due Diligence Period is for the County to perform its non-destructive testing/analysis and investigation on the suitability of the Property for County purposes. This may include, but is not limited to, (1) the right to conduct geotechnical, biological and cultural resource investigations; (2) the right to conduct a Phase I environmental investigation; (3) boundary survey and utility location; (4) the right to perform a property analysis inclusive of any building inspections (structural, mechanical, plumbing, electrical, etc.). The County shall also have the right to conduct Phase II environmental investigations and other invasive inspection with the Seller's consent. The County shall submit a request ("Request") in writing for any invasive inspection to the Seller. Seller shall respond within three business days of receipt of the Request or it shall be deemed approved.

The County shall have immediate access to the Property and have the right to enter the Property along with any third party vendor to perform any inspection, investigation and/or testing.

The County may unilaterally elect to cancel this transaction for any reason during the Due Diligence Period and receive a full refund of its Earnest Money Deposit ("EMD") from Chicago Title without the need for Seller's written approval.

**TERMS:**

This Conditional Offer is made on behalf of the County. The escrow period shall begin upon Escrow Opening for a total of One Hundred Eighty (180) calendar days inclusive of a Due Diligence Period of One Hundred Twenty (120) calendar days defined as the "Escrow Period". The County shall have the right to complete the purchase ("Close of Escrow") any time during the Escrow Period. If the last day of the Escrow Period ends on a holiday or weekend day, then it shall automatically be moved to the next business day.

This Conditional Offer is contingent upon, but not limited to, the following to occur prior to the expiration of the Due Diligence Period:

(1) County obtaining an appraisal report completed by a Nevada licensed appraiser that states the fair market value of the Property is equal to or greater than the Purchase Price.

If the appraised value is less than the Purchase Price, then Seller and County may mutually agree to a new Purchase Price, or either Seller or County may cancel this transaction in writing to the other and County will receive an immediate refund of its earnest money deposit from Chicago Title without a requirement for the Seller's written approval for the release of funds. If either Seller or County cancels this transaction due to appraised value being less than the Purchase Price then Seller and County are not responsible for any costs incurred by the other party.

(2) County obtaining a Preliminary Title Report and any exceptions;
(3) Seller allowing County to enter the Property to perform inspections and due diligence on the Property;
(4) Seller providing County any property information in its possession such as recorded or unrecorded agreements, building plans, permits, reports, inspections, site surveys, and any materials related to the condition of the property, facility and its improvements.

As stated above, the County may unilaterally elect to cancel this transaction for any reason during the Due Diligence Period and receive a full refund of its EMD from Chicago Title without the need for Seller's written approval. The contingencies listed above are for informational purposes and do not limit the County's ability to cancel for any reason and without penalty whatsoever during the Due Diligence Period.

### ADDITIONAL CONTINGENCY:

This Conditional Offer is also contingent upon obtaining the Clark County Board of County Commissioner's ("BCC") approval as required pursuant to Nevada Law. If the Conditional Offer is accepted by the Seller pursuant to all terms and contingencies ("Agreement"), this Agreement will be submitted to the BCC for approval prior to the expiration date of the Due Diligence Period. If this Agreement is not approved by the BCC, or the County elects to cancel during the Due Diligence Period for any reason, the Agreement shall immediately become null and void and the Parties will be under no obligation to perform the obligations outlined in this Agreement; neither party is entitled to any compensation or damages or other remedy for any reason, and the County shall be entitled to a full refund of the Earnest Money Deposit from Chicago Title without the need for Seller's written approval.

### EARNEST MONEY DEPOSIT:

Upon acceptance of this Conditional Offer by Seller, the County shall open escrow and deposit a Fifty Thousand Dollar ($50,000) EMD with Chicago Title within ten (10) business days. The EMD will be fully refundable to the County during the One Hundred Twenty (120) calendar day Due Diligence Period. If the County exercises its unilateral right to cancel this transaction during the Due Diligence Period for any reason including, but not limited to, the BCC not approving this Agreement, as detailed above, then County will send written notification to Chicago Title for the immediate release of the EMD to the County without a requirement for the Seller's written approval for the release of funds. If the County does not exercise its unilateral right to cancel during the Due Diligence Period and BCC approves this Agreement, then the EMD shall be applied toward the Purchase Price and become non-refundable to the County, except as otherwise outlined in this Agreement, unless Seller breaches this Agreement.

### SELLER PROPERTY INFORMATION:

The Seller, if in Seller's possession, shall provide the County with any information related to this property within Ten (10) business days from the signing, and acceptance, of this Conditional Offer. The information shall include, but is not limited to, service or property agreements, environmental conditions, demolition plans, building plans, design/improvement plans, permits, inspection reports (building, soils, structural, mechanical, plumbing, electrical, etc.), site surveys, asbestos and/or hazardous materials inspections/reports, etc. inclusive of any information related to this Property.

### BROKER COMMISSIONS:

The Parties represent and warrant to each other that no brokerage commission, finder's fee, or other compensation is due or payable with respect to the Agreement; however, Seller may pay a commission at its sole cost and expense and Seller hereby agrees to indemnify, defend, and hold the County harmless from and against any losses, damages, costs and expenses incurred by County by reason of any fee, claims, or commission of any broker Seller has used or engaged.

County shall not pay or be responsible for payment of any commission(s), Finder's Fee, or other compensation to real estate agents/brokers or others for this Agreement, or any and all costs associated with delivering clear title.

### ESCROW REQUIREMENTS:

This Conditional Offer shall be consummated through an escrow established with Chicago Title Company ("Title Company"). Escrow Officer Jennifer Reinink will handle monetary disbursement and document processing at the Close of Escrow. County shall open escrow and deposit EMD within Ten (10) business days of acceptance of this Conditional Offer. Close of Escrow shall occur within One Hundred Eighty (180) calendar days or sooner of Escrow Opening if all conditions have been satisfied by the Parties and the County has elected not to cancel during the Due Diligence Period. In the event Seller does not provide Title Company necessary information and documentation in order to facilitate a timely closing of this transaction and Close Of Escrow does not occur by the end of the Escrow Period, then County shall be entitled to an immediate full refund and return of its EMD without written approval from Seller and may pursue Seller for actual damages incurred by County as further explained herein. If escrow fails to close within One Hundred Eighty (180) calendar days, it shall only be extended per the Parties mutual agreement in writing to extend the Escrow Period. The Parties agree to execute and deliver to Title Company such additional and supplemental instructions as Title Company may require providing clarification of Title Company's duties under this Agreement. At Close of Escrow, Seller shall execute and deliver to County, a good and sufficient Grant, Bargain and Sale Deed in a form acceptable to the Parties, conveying good, valid, marketable and insurable fee title to the Property.

## TITLE POLICY:

Within Ten (10) business days of Close of Escrow and at Seller's expense, Title Company will provide the County with a CLTA standard coverage owner's policy of title insurance ("Title Policy") insuring County's ownership interest in the Property in the amount of the Purchase Price, subject to only standard policy printed form exceptions and the permitted exceptions of record, if any. At County's discretion and expense, it may elect to acquire Title Policy endorsements and/or ALTA extended coverage title insurance.

## REPRESENTATIONS:

Seller agrees to provide unconditional lien releases from its contractors at Close of Escrow for any improvements which may be under construction at the time this Conditional Offer is being made, if any. Seller represents that no other contractors have performed work during any operative statutory period.

Seller represents to the best of its knowledge the Property is in compliance with the laws, orders, and regulations of each governmental department, commission, board, or agency having jurisdiction over the Property in those cases where noncompliance would have a material adverse effect on the Property.

Seller represents that there are no actions, suits, claims, proceedings or investigations pending or, to the best of Seller's knowledge, threatened against or affecting the Property. Seller agrees to indemnify, defend and hold harmless County, and its officers, employees, agents and contractors from and against any and all liability, claims, demands, damages and costs of any kind, including attorney's fee, arising out of or in connection with any incident that occurred on or arose in connection with the Property, during Seller's ownership of the Property. The representations, and agreements made herein will survive the Escrow Closing.

## CLOSING COSTS:

The Seller shall pay for the CLTA Owner's Title Policy and ½ of escrow fees. County shall pay the costs associated with obtaining an ALTA extended title insurance policy, any title policy endorsement, ½ of escrow fees and normal recording fees. Seller will pay for any reconveyance and lien release fees or unpaid real property taxes or other items as may be necessary to clear title to the Property. The following items to be prorated as of the Close of Escrow: property taxes, sewer, water, power, gas, and trash. Rents or other deposits to be further addressed in escrow documents.

## GOVERNING LAW:

This Agreement shall be constructed as if prepared by both Parties. This Agreement shall be construed, interpreted and governed by the laws of the State of Nevada.

The parties hereby consent to the jurisdiction of the state courts of the State of Nevada for any dispute involving this Agreement. No remedy set forth herein shall be deemed exclusive but shall, wherever possible, be cumulative with all other remedies at law or in equity. If it is determined by a court of competent jurisdiction that any provision of this Agreement (or part thereof) is invalid, illegal, or otherwise unenforceable, the remainder of this Agreement shall remain in full force and effect and bind the parties according to its terms. No modification of, or amendment to, this Agreement (including any implied waiver) shall be effective unless in writing signed by all parties hereto. This Agreement sets forth the entire agreement and understanding of the parties with respect to the subject matter hereof and merges all prior or contemporaneous agreements and understandings (whether written, verbal or implied) of the parties with respect thereto.

## DEFAULT/REMEDIES:

The breach of any term of this Agreement by Seller or Buyer shall be deemed a "Default" as follows: If a Party fails to pay money as due hereunder, a Default shall be deemed to have occurred if that Party does not make the payment in full within ten (10) days after such payment is due (except there shall be no grace period for either Party's breach of the covenant to purchase or sell the Property on the closing date). In the case of a breach of any other obligation hereunder, a Default shall be deemed to have occurred if that Party fails to cure such breach within fifteen (15) days of written notice (the "Default Notice") from the other Party specifying such breach and the action required to cure such breach. The following remedies shall apply in the event of Default under this Agreement:

1.1. BUYER DEFAULT. IF BUYER DEFAULTS IN ITS OBLIGATION TO PURCHASE THE PROPERTY AFTER THE DUE DILIGENCE PERIOD HAS EXPIRED, SELLER WILL BE DAMAGED BUT IT IS EXTREMELY DIFFICULT AND IMPRACTICAL TO ASCERTAIN THE EXTENT OF SELLER'S ACTUAL DAMAGE WHICH WOULD BE BASED ON OPINIONS OF VALUES WHICH COULD VARY SIGNIFICANTLY. THE PARTIES AGREE THAT IN THE EVENT OF SUCH DEFAULT, SELLER SHALL RECEIVE, AS SELLER'S SOLE REMEDY, BUYER'S EMD, AS LIQUIDATED DAMAGES WHICH REPRESENTS THE PARTIES' FAIR AND REASONABLE BEST ESTIMATE OF THE SELLER'S ACTUAL DAMAGES IN SUCH EVENT OF DEFAULT. CANCELLATION OF THIS AGREEMENT DURING THE DUE DILIGENCE PERIOD BY COUNTY FOR ANY REASON SHALL NOT BE CONSIDERED A DEFAULT OF THIS AGREEMENT.

1.2. SELLER'S DEFAULT. IF SELLER IS IN DEFAULT OF SELLER'S COVENANT TO SELL THE PROPERTY TO BUYER, OR IF SELLER IS OTHERWISE IN DEFAULT BEFORE THE CLOSE OF ESCROW, BUYER SHALL HAVE ANY AND ALL REMEDIES AVAILABLE BY LAW INCLUIDNG, BUT NOT LIMITED TO (1) TERMINATE THIS AGREEMENT, IN WHICH CASE THE EMD SHALL BE RETURNED TO BUYER AND BUYER SHALL RECOVER BUYER'S ACTUAL OUT OF POCKET EXPENSES REASONABLY INCURRED BY BUYER IN CONNECTION WITH THE PROPERTY, INCLUDING LEGAL FEES, (2) INITIATE AN ACTION FOR SPECIFIC PERFORMANCE WHICH INCLUDES THE RIGHT TO RECORD A NOTICE OF PENDING ACTION IN CONNECTION THEREWITH.

**NOTICES:**

No notice, request, demand, instruction, or other document to be given hereunder to any Party shall be effective for any purpose unless (1) personally delivered to the person at the appropriate address set forth below (in which event such notice shall be deemed effective only upon such delivery), (2) delivered by air courier next-day delivery (e.g. Federal Express), (3) delivered by mail, sent by registered or certified mail, return receipt requested; or (4) tele-copied, as follows:

**If to Seller, to:**

Jessica Cegavske
Sun Commercial Real Estate, Inc.
6140 Brent Thurman Way, Suite 140
Las Vegas, NV89148

c/o SF Galleria, LLC
5940 South Rainbow Boulevard
Las Vegas, NV 89118

**If to Buyer, to:**

Attention: Director
500 South Grand Central Parkway, 4th Floor
Las Vegas, NV 89155-1825
Phone: (702) 455-4616
Fax: (702) 455-5817

Notices delivered by air courier shall be deemed to have been given the next business day after deposit with the courier and notices mailed shall be deemed to have been given on the second business day following deposit of same in any United States Post Office mailbox in the state to which the notice is addressed or on the third business day following deposit in any such post office box other than in the state to which the notice is addressed, postage prepaid, addressed as set forth above. Notices tele-copied shall be deemed delivered the same business day received. The addresses, addressees, and telecopy number for the purpose of this Section, may be changed by giving written notice of such change in the manner herein provided for giving notice. Unless and until such written notice of change is received, the last address and addressee and telecopy number stated by written notice, or provided herein if no such written notice of change has been received, shall be deemed to continue in effect for all purposes hereunder.

Conditional Offer to Purchase 1291 West Galleria Drive, Henderson, NV 89014

## TIME IS OF THE ESSENCE:

Time is of the essence for this Conditional Offer as it will expire on Wednesday March 14, 2018 at 5:00 p.m., and become null and void if the Seller does not respond. All Parties shall perform their obligations under this Agreement strictly within the required time frames.

This letter confirms the mutual understanding of the Parties with respect to the matters contained herein. Please confirm your acceptance of the Agreement by signing and returning the same. If the County does not receive a fully executed original of this letter by 5:00pm Wednesday March 14, 2018, this Conditional Offer will be deemed withdrawn and be of no further force or effect. If you have any questions, concerning any aspects of this Conditional Offer, please contact Bob Tomiyasu at (702) 455-0110.

Respectfully,

*[signature]*

Lisa Kremer
Director of Clark County Real Property Management

Approved as to form:

*[signature]*

Shannon Wittenberger
Deputy District Attorney

## ACCEPTANCE:

The undersigned accepts Clark County's Conditional Offer as written above pursuant to all terms and contingencies. This Conditional Offer embodies all the consideration agreed to between Clark County and the undersigned.

SF Galleria, LLC (Seller)

Signature: *[signature]*

Print Name: David Stubbs

Title: GBMDS, LLC, Manager

Date: 03-14-2018

Cc: Randall J. Tarr, Assistant County Manager
    Krynn Williams, Property Acquisition Administrator
    Shannon Wittenberger, Deputy District Attorney
    Bob Tomiyasu, Real Estate Administrator



Exhibit A

Lori Mas Corporate Center, 1291 West Galleria Drive, Henderson, NV 89014
APN 178-03-110-022, +/-42,640 square foot office building on +/-2.36 acres